# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

KRISTINA MARTINEZ, *in her capacity as*
*the Personal Representative of the Wrongful*
*Death Estate of Barbara Granger,* and
SCOTT GRANGER,

      Plaintiffs,

vs.                                   No. CIV 19-0994 JB/JHR

DART TRANS, INC.; GILBERT TAN D/B/A
GMT TRUCKING; SUNRISE TIRE AND
LUBE SERVICE, INC.; HAR-SUKH CORP.
INC.; SAM SANDHU; JASVIR SINGH;
RAJINDER SINGH BASSI; SUKHDEV
SINGH DHALIWAL; TERI-OAT, LLC;
JOHN DOE 1; JOHN DOE 2; GOODWILL
TRUCKING, LLC and GURPREET SUCH,

      Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

    **THIS MATTER** comes before the Court on the Motion to Set Aside Default, filed January 6, 2021 (Doc. 98)("Default Motion"). The Court held a hearing on May 11, 2021. <u>See</u> Clerk's Minutes at 1, filed May 12, 2021 (Doc. 111). The issues are: (i) whether Defendant Sunrise Tire and Lube Service, Inc.'s culpable conduct caused the Default Judgment, where Sunrise Tire argues that it could not retain an attorney because of the COVID-19 pandemic and because lawyers it contacted were unwilling to oppose Mr. Mark Baker, the Plaintiffs' counsel; (ii) whether Sunrise Tire has a meritorious defense, where Sunrise Tire argues that it changed the lug nuts on a wheel other than the wheel that struck Barbara Granger, the decedent; and (iii) whether the Plaintiffs, Kristina Martinez and Scott Granger, will be prejudiced by setting aside the Court's default judgment, where this litigation has been underway for nearly three years and trial is fast

approaching.  The Court will not set aside the Default Judgment under rule 55(c) of Federal Rules

of Civil Procedure, because: (i) the Court concludes that Sunrise Tire has chosen largely to be

unresponsive in this litigation,  given that the relevant events in this litigation occurred well before

the COVID-19 pandemic began and the Court has heard other cases, including the present case,

where attorneys oppose Mr. Baker; (ii) Sunrise Tire has not presented a meritorious defense,

because it has not provided any evidence or specific factual basis in support of its contention that

it did not change the lug nuts on the wheel that struck B. Granger; and (iii) allowing Sunrise Tire

to re-enter the litigation would prejudice the Plaintiffs, because it would exacerbate significantly

the duration, cost, and complication of this case.  Accordingly, the Court denies the Default

Motion.

### **FINDINGS OF FACT**

The Court takes its facts from the Plaintiffs' Complaint.  <u>See</u> Complaint for Personal Injury,

Wrongful Death, and Loss of Consortium ¶¶ 1-90, at 1-17, filed October 24, 2019 (Doc. 1-1).  In

reviewing a default judgment, the Court takes "'the well-pleaded factual allegations' in the

complaint 'as true.'"  <u>DIRECTV, Inc. v. Hoa Huynh</u>, 503 F.3d 847, 854 (9th Cir. 2007)(quoting

<u>Cripps v. Life Ins. Co. of North America</u>, 980 F.2d 1261, 1267 (9th Cir. 1992), and citing Fed. R.

Civ. P. 55(a), and <u>Benny v. Pipes</u>, 799 F.2d 489, 495 (9th Cir. 1986)).  <u>See</u> <u>United States v.

Craighead</u>, 176 F. App'x 922, 925 (10th Cir. 2006).  "However, a 'defendant is not held to admit

facts that are not well-pleaded or to admit conclusions of law.'"  <u>DIRECTV, Inc. v. Hoa Huynh</u>,

503 F.3d at 854 (quoting <u>Nishimatsu Constr. Co. v. Houston Nat'l Bank</u>, 515 F.2d 1200, 1206 (5th

Cir. 1975)).  "[D]istrict courts have discretion to decline to award default judgment when there are

serious doubts as to the merits of the plaintiff's substantive claim."  <u>Sutton v. Heartland Payment

Sys., LLC</u>, No. CIV 18-0723 PJK/KK, 2019 WL 5268597, at *1 (D.N.M. Oct. 17,

2019)(Kelly, J.)(citing <u>Eitel v. McCool</u>, 782 F.2d 1470, 1471 (9th Cir. 1986)).  <u>See</u> <u>Tripodi v.</u> <u>Welch</u>, 810 F.3d 761, 764 (10th Cir. 2016)("After a default judgment is handed down, a defendant admits to a complaint's well-pleaded facts and forfeits his or her ability to contest those facts.").

1. **The Parties.**

1. "Plaintiff Kristina Martinez was appointed Personal Representative of the Wrongful Death Estate of Barbara Granger" on February 18, 2019.  Complaint ¶ 9, at 3.

2. "Martinez is a resident of Santa Fe County, State of New Mexico."  Complaint ¶ 9, at 3.

3. "Plaintiff Scott Granger is a resident and citizen of Crawford County, Pennsylvania."  Complaint ¶ 10, at 3.

4. "At the time of her death, Barbara and Scott were traveling the country celebrating Scott's recent recovery from cancer."  Complaint ¶ 4, at 2.

5. B. Granger and S. Granger "had been married 27 years."  Complaint ¶ 4, at 2.

6. "In addition to Scott, Barbara left behind their three children -- Levi, Travis, and Amanda -- and four grandchildren."  Complaint ¶ 4, at 2.

7. "Sukhdev Singh Dhaliwal is listed as the owner of American Tire and Truck Repair with the business license division of San Joaquin County, California."  Complaint ¶ 15, at 4.

8. Dhaliwal "is a resident of San Joaquin County, State of California, and a citizen of California."  Complaint ¶ 15, at 4.

9. Sunrise Tire "is a California corporation incorporated in March 2017."  Complaint ¶ 16, at 4.

10. "Sunrise Tire's principal place of business is located in San Joaquin County, California."  Complaint ¶ 16, at 4.

11.     Dhaliwal "is Sunrise Tire's Chief Executive Officer and registered agent." Complaint ¶ 17, at 4.

12.     Dhaliwal "exercised control over, was an agent, or was a managing agent of the business operating as American Tire and Truck Repair during the times relevant to this complaint." Complaint ¶ 17, at 4.

**2.      The Truck Repairs.**

13.     Defendant Dart Trans., Inc., "was the owner and motor carrier operating the tractor-trailer Gilbert Tan was driving during all times relevant to this case."  Complaint ¶ 29, at 6.

14.     "In July 2018, Dart allowed the mechanic shop operating as, among other business names, American Tire and Truck Repair, to perform work on the Dart tractor-trailer that Tan operated."  Complaint ¶ 30, at 6.

15.     "Sunrise Tire and Lube Service, Inc. . . . [and] Sukhdev Singh Dhaliwal were responsible for the operations, hiring, maintenance, and work American Tire and Truck Repair provided."  Complaint ¶ 30, at 6.

16.     "[T]he work on the Dart trailer's axle created a dangerous condition such that it only was a matter of time before the wheel fasteners for the rear driver's side axle on the trailer fell off, allowing the wheels to detach from the tractor-trailer."  Complaint ¶ 34, at 7.

**3.      The Accident.**

17.     "As the Dart tractor-trailer was driving east on Interstate 40 in the area of mile marker 212, two wheels from the driver's side rear axle detached from the Dart trailer."  Complaint ¶ 35, at 7.

18.     One wheel "skated up an embankment, through a barbed wire fence, and traveled another 100 feet before it came to rest; the other crossed the center median of the interstate."

Complaint ¶ 35, at 7.

19. "When the wheels detached from the Dart tractor-trailer, Scott Granger and his wife were both on their motorcycles traveling west in the inside lane of travel." Complaint ¶ 36, at 7.

20. "Barbara was in front of Scott." Complaint ¶ 36, at 7.

21. "Scott suddenly saw the Dart wheel cross the median and hit Barbara." Complaint ¶ 36, at 7.

22. "The force of the wheel striking Barbara pushed her into the outside lane of travel, where the Goodwill Trucking tractor-trailer hit her, throwing her motorcycle off the roadway." Complaint ¶ 37, at 8.

23. B. Granger "became entangled in the Goodwill Trucking tractor-trailer's undercarriage." Complaint ¶ 38, at 8.

24. "The tractor-trailer dragged her until" Defendant Gurpreet "Such finally brought it to a stop at a location . . . approximately .5 mile from the point that he first hit her." Complaint ¶ 38, at 8.

25. S. Granger "was on his motorcycle traveling just behind Barbara and saw the wheel from the Dart tractor-trailer hit her before she disappeared under the Goodwill Trucking tractor-trailer." Complaint ¶ 3, at 2.

26. "After seeing the wheel from the Dart tractor-trailer hit Barbara, Scott immediately stopped and began searching for her." Complaint ¶ 39, at 8.

27. S. Granger "found where her motorcycle came to rest off the interstate and frantically looked for" B. Granger. Complaint ¶ 39, at 8.

28. "Another driver stopped, pointed out to Scott the Goodwill Trucking tractor-trailer parked down the road, and gave Scott a ride to where it was parked." Complaint ¶ 39, at 8.

29.     "Scott found Barbara there still entangled in the undercarriage."  Complaint ¶ 39, at 8.

30.     B. Granger "died at the scene from . . . injuries she suffered during the crash."  Complaint ¶ 40, at 8.

31.     "The Dart tractor-trailer pull[ed] over and stop[ped] after throwing its rear trailer wheels."  Complaint ¶ 41, at 8.

32.     "[L]aw enforcement found fluid that leaked from the rear trailer axle pooled at the same location the tractor-trailer was seen temporarily stopped."  Complaint ¶ 41, at 8.

33.     "State law enforcement issued citations based on the Dart tractor-trailer's stripped and missing wheel fasteners for the lost wheels and further documented that the axle was damaged and leaking fluid."  Complaint ¶ 42, at 8.

## PROCEDURAL BACKGROUND

The Plaintiffs filed the Complaint in the First Judicial District Court, County of Santa Fe, State of New Mexico, on August 8, 2019.    See Complaint at 1.  Goodwill Trucking, LLC, a defendant no longer involved in this case, see Stipulated Order of Partial Dismissal with Prejudice, filed March 23, 2021 (Doc. 108), removed the case to federal court, see Notice of Removal, filed October 24, 2019 (Doc. 1).  When Defendants Sunrise Tire and Sukhdev Singh Dhaliwal did not file an answer with the Court, the Clerk of the Court entered default, see Clerk's Entry of Default at 1, filed December 6, 2019 (Doc. 12)("Sunrise Default Entry"); Clerk's Entry of Default at 1, filed December 11, 2019 (Doc. 19)("Dhaliwal Default Entry"), and, later, the Court entered default judgment, see Default Judgment as to Liability Against Defendants Sunrise Tire and Lube Service, Inc. and Sukhdev Singh Dhaliwal, filed January 29, 2020 (Doc. 36)("Default Judgment").

1. **The Complaint.**

Counts III, VI, and VII of the Complaint relate to Sunrise Tire and Dhaliwal.  See Complaint ¶¶ 61-65, at 11-12 (discussing Count III: Negligence); id. ¶¶ 83-86, at 15 (discussing Count VI: Negligent Infliction of Emotional Distress); id. ¶¶ 87-90, at 16 (discussing Count VII: Loss of Consortium).  The Plaintiffs allege that Sunrise Tire and Dhaliwal, as well as other Defendants who have since been dismissed from this case, were negligent, explaining that they

> owed the plaintiffs a duty to operate the tire and mechanic shop doing business as, among other names, American Tire and Truck Repair, with reasonable care.  That includes using reasonable care to ensure that services on all vehicles, and commercial tractor-trailers in particular, were performed with the care a reasonably prudent person would exercise to prevent injury to others, including the traveling public.  The care necessary to satisfy that duty in performing work on commercial tractor-trailers increased commensurate with the risk of catastrophic harm commercial tractor-trailers pose to others on the roadway.

Complaint ¶¶ 61-62, at 11-12.  The Plaintiffs allege that they "breached their duties, including through negligence in doing work directly or through agents on the Dart tractor-trailer Tan operated at the time of Barbara Granger's death."  Complaint ¶ 63, at 12.  The Plaintiffs contend that the "breach was a direct and proximate cause of Barbara Granger's injuries and death."  Complaint ¶ 64, at 12.  The Plaintiffs assert that the "actions and omissions were reckless, willful, and wanton."  Complaint ¶ 65, at 12.

The Plaintiffs then contend that all of the Defendants imposed negligent infliction of emotional distress on S. Granger.  See Complaint ¶ 86, at 15.  The Plaintiffs note that S. Granger "had a close family relationship with his wife," B. Granger.  Complaint ¶ 86, at 15.  The Plaintiffs state that: "As a result of seeing his wife needlessly killed, Scott suffered severe emotional distress."  Complaint ¶ 85, at 15.  The Plaintiffs allege that "the defendants' negligence was a cause of Barbara's injuries and death."  Complaint ¶ 86, at 15.

Last, the Plaintiffs discuss their loss-of-consortium claim. See Complaint ¶¶ 87-90, at 16. The Plaintiffs explain that B. Granger and S. Granger had "an intimate familial relationship" in which "[t]hey were mutually dependent on each other . . . ." Complaint ¶ 88, at 16. As a result, the Plaintiffs allege that S. Granger "cannot enjoy life in the same way now that the defendants severed his relationship with her." Complaint ¶ 88, at 16. The Plaintiffs conclude that "the defendants' conduct has forever deprived Scott of Barbara's affection, society, and companionship." Complaint ¶ 90, at 16. The Plaintiffs ask the Court for a judgment against the Defendants for

> damages to the full extent permitted by law, including compensatory and punitive damages, pre-judgment and post-judgment interest at the legal rate, for their costs, and for such other and further relief to which they may be entitled under the facts and circumstances. The plaintiffs' compensatory damages for the wrongful death of Barbara Granger include, but are not limited to: (1) the pain and suffering Barbara experienced; (2) Barbara's lost earning capacity and the value of her household services; (3) the value of Barbara's life apart from her earning capacity; (4) the reasonable expenses of necessary medical care and treatment and funeral and burial; (5) the aggravating circumstances attending the defendants' wrongful act, neglect, or default; and (6) the loss to the beneficiaries of other expected benefits that have a monetary value. Plaintiff Scott Granger additionally should recover compensatory damages for the loss of society, guidance, and companionship of Barbara Granger and the emotional distress he suffered as a result of witnessing her death.

Complaint at 16 (no paragraph numbering).

### 2. The Motion for Entry of Default.

The Plaintiffs asked the Clerk to enter default against Sunrise Tire. See Plaintiff's Motion for Entry of Default Against Sunrise Tire and Lube Service, Inc., Har-Sukh Corp., Inc., and Teri-Oat, LLC at 2, filed December 6, 2019 (Doc. 11)("Motion for Entry of Default Against Sunrise"). The Plaintiffs asked the Clerk to enter default, because of Sunrise Tire's "failure to timely respond to the complaint," explaining that Sunrise Tire received service on September 11, 2019. Motion

for Entry of Default Against Sunrise at 2.  Thereafter,

> [o]n October 11, 2019, a paralegal for Mr. Dhaliwal requested a 30-day extension of the time to answer, to which Plaintiffs agreed.  When these defendants still had not responded to the complaint by November 14, 2019, undersigned counsel followed up by email to confirm whether they intended to do so.  On November 20, 2019, a paralegal from Mr. Dhaliwal's firm left a message suggesting they had a New Mexico attorney reviewing the case for them and that they would be answering.  As of . . . December 6, 2019, however, no answer has been filed.

Motion for Entry of Default Against Sunrise at 2.

### 3.    The Clerk's Entries of Default.

On December 6, 2019, Mitchell R. Elfers, the Clerk of the United States District Court for the District of New Mexico, "enter[ed] default judgment against Sunrise Tire and Lube Service, Inc."  Sunrise Default Entry at 1.  The Default Entry noted that Sunrise Tire, "against whom judgment for affirmative relief is sought in this action, has failed to plead or otherwise defend as provided by the Federal Rules of Civil Procedure."  Sunrise Default Entry at 1.  The Clerk, therefore, entered default against Sunrise Tire pursuant to rule 55(a) of the Federal Rules of Civil Procedure.  See Default Entry at 1.  For the same reasons, the Clerk entered default against Dhaliwal on December 11, 2019.  See Dhaliwal Default Entry at 1.

### 4.    The Motion for Default Judgment.

On December 16, 2019, the Plaintiffs asked the Court to "enter a default judgment on liability against Sunrise Tire" and Dhaliwal.  Plaintiffs' Motion for Entry of Default Judgment Against Sunrise Tire and Lube Service, Ind., Har-Sukh Corp., Inc., Terri-Oat, LLC, Rajinder Singh Bassi, and Sukhdev Singh Dhaliwal, filed December 16, 2019 (Doc. 20)("Motion for Default Judgment").  The Plaintiffs noted that, "[a]lthough they have not appeared personally or by a representative, Plaintiffs provided these defendants and the California law firm that has indicated that it represents them a copy of the motion for default."  Motion for Default Judgment ¶ 3, at 2.

The Plaintiffs therefore asked the Court to "enter a default judgment against these defendants and schedule a damages hearing to follow." Motion for Default Judgment ¶ 6, at 2.

      **5.**     <u>**The Default Judgment**</u>.

The Court held a hearing on the Motion for Default Judgment on January 22, 2020. <u>See</u> Clerk's Minutes at 1, filed January 22, 2020 (Doc. 34). When the Court held a hearing on the Motion for Default Judgment, neither Sunrise Tire nor Dhaliwal attended the hearing. <u>See</u> Default Judgment at 1. Mr. Rattan Dhaliwal has appeared on behalf of Sunrise Tire in this case, but is not an attorney of record on CMECF. <u>See</u> Staff Notes (dated January 7, 2021), Docket Text ("Tried to call Mr. Dhaliwal with no success. Emailed him in re to not being admitted to our court with attached instructions for Associating and a Petition for Admission.").[1]

On January 29, 2020, the Court granted the Plaintiffs' request for default judgment as to Sunrise Tire and Dhaliwal. <u>See</u> Default Judgment at 2. The Court explained that, although it would enter judgment regarding liability "against these Defendants and in favor of Plaintiffs," the "amount of damages to be awarded to Plaintiffs against these Defendants should be reserved for subsequent determination by the Court." Default Judgment at 2. The Court also instructed that the "Plaintiffs may petition the Court for costs under" rule 54 of the Federal Rules of Civil Procedure against Sunrise Tire and Dhaliwal "after damages are determined." Default Judgment at 2.

      **6.**     <u>**The Default Motion**</u>.

Sunrise Tire, participating for the first time in this litigation, asks the Court to set "aside default entered against Defendant on or about January 7, 2020." Default Motion at 2. Sunrise Tire

---

[1]To date, Mr. Dhaliwal has not complied with the requirements to be admitted to the District of New Mexico.

insists that "its failure to file a response was excusable, because it could not obtain the services of a lawyer for various reasons to file a response to this instant lawsuit and to represent the Defendant." Default Motion at 2. Sunrise Tire also maintains that it "never worked on the side of the truck tires that broke and cause [sic] the death of Ms. Barbara Granger." Default Motion at 2.

Sunrise Tire then argues that "courts take a liberal approach in determining whether 'good cause' has been shown under Rule 55(c) to justify the setting aside an entry of default." Default Motion 5 (quoting <u>United States v. Bridwell's Grocery & Video</u>, 195 F.3d 819, 820-22 (6th Cir. 1999)). Sunrise Tire continues that its conduct constitutes excusable neglect under rule 60(b)(1) of the Federal Rules of Civil Procedure. <u>See</u> Default Motion at 6. Sunrise Tire explains:

> In the instant matter, Defendant cannot represent itself. This created a very first hurdle to cross. Then Defendant through its officer diligently tried to hire an attorney in New Mexico but without any success whatsoever due to various reasons. Covid 19 and the shutdown that followed made the matters worst. Officer of the Corporation gave a declaration to this effect, and the attorney for the corporation confirmed this information, and gave the declaration to the same effect.

> Defendant is not aware of any prejudice to the Plaintiffs, and in fact does have meritorious defense. The truck simply could not have travelled to New Mexico if the job done by Defendant was less than acceptable by industry standards. In other words, if the workmanship was bad or shoddy.

Default Motion at 6. Sunrise Tire therefore insists that its "inability to retain a lawyer, covid 19, and subsequent inability to pay the retainer to retain a lawyer does constitute an inadvertent mistake and excusable neglect. It did not create any prejudice to Plaintiffs. It was not an act in bad faith to hinder or manipulate the proceedings." Default Motion at 7. Accordingly, Sunrise Tire asks the Court to set aside the default judgment under rule 60(b)(1). <u>See</u> Default Motion at 7.

7.    **The Response**.

The Plaintiffs oppose the Default Motion.[2]  See Plaintiffs' Response in Opposition to the Notice and Motion to Set Aside Default of Defendant Sunrise Tire and Lube Service, Inc. Memorandum of Points and Authorities and Declaration of Defendant, and its Attorney in Support Thereof, filed January 20, 2021 (Doc. 99)("Response").  The Plaintiffs contend that, as a result of Sunrise Tire's "grossly deficient repairs," a wheel detached from a tractor trailer's axle, hitting Plaintiff "Barbara Granger and causing her death as she traveled on her motorcycle."  Response at 1.  The Plaintiffs continue that, although Sunrise Tire "acknowledged service," and "initially had its counsel, Mr. Dhaliwal, secure an agreed-to extension to respond to the complaint," it "did ***nothing*** before or after the Court entered default judgment against it."  Response at 1-2 (emphasis in original).

The Plaintiffs first note that Sunrise Tire is ineligible for rule 60(b)(6) relief, because "Sunrise's conduct (more specifically, its knowing failure to act to defend the case) caused the default."  Response at 9.  The Plaintiffs continue that the Default Motion gives "no information about the lawyers they contacted, when the calls were made, or why -- unlike the wide range of defendants who regularly appear in this district -- this particular company could not find representation."  Response at 10.  The Plaintiffs explain that, although Mr. Dhaliwal, Sunrise Tire's attorney, is from California, District of New Mexico local rules allow Mr. Dhaliwal to file an answer "without associating a local New Mexico attorney."  Response at 11.

The Plaintiffs then disagree with Sunrise Tire's arguments regarding its financial difficulties, contending that "'general financial difficulties in paying its retained counsel' is not a

---

[2]Sunrise Tire did not file a Reply with the Court.

sufficient justification for a company to overturn a default judgment under Rule 60(b)." Response

at 12 (quoting <u>Dolphin Plumbing Co. of Fl., Inc. v. Fin. Corp. of N.A.</u>, 508 F.2d 1326, 1327 (5th

Cir. 1975)(per curium)).  Regarding Sunrise Tire's defense to the claims, the Plaintiffs explain:

> Sunrise replaced wheel studs and mounted/dismounted the same wheels that detached from the trailer, leading to Barbara Granger's death.  Complaint ¶¶ 7, 61-65.  The fact that Sunrise (doing business as American Tire and Truck Repair) replaced wheel studs on the trailer just weeks before a wheel from that trailer detached and killed Barbara Granger, is documented in an invoice.  American Tire & Truck Repair Invoice dated 07/12/2018 [(filed January 21, 2021 (Doc. 99-1)].  And Sunrise does not deny that it replaced wheel studs on that trailer. Instead, with no supporting evidence, the company offers only a conclusory statement that it worked on wheels on the other side of the trailer.  Motion to Set Aside ¶ 5, at 3.  That convenient position is directly contradicted by the sworn statements of Gilbert Tan, the driver of the tractor-trailer when Barbara Granger was killed.  *See, e.g.*, Def. Gilbert Tan's Supp. Answers to Interrogatory Nos. 12 and 13, [(filed January 21, 2021 (Doc. 99-2)].

Response at 13.  The Plaintiffs then argue that they will be prejudiced if the Court relieves Sunrise

Tire from the default judgment, noting the "emotional toll dragging the case out will cause the

family," and that "it will materially increase the cost of litigation."  Response at 14.  Accordingly,

the Plaintiffs ask the Court to deny the Default Motion.  <u>See</u> Response at 14-15.

**8.    The Hearing.**

The Court held a hearing on May 11, 2021.  <u>See</u> Clerk's Minutes at 1, filed May 11, 2021

(Doc. 111).  The Court noted initially that, "given all the time that's passed" and the fact that "this

case is ready for trial and ready to be brought to a conclusion," it was "not inclined to set aside the

default judgment."  Draft Transcript of Hearing at 2:23-3:2, taken May 11, 2021 (Court)("Tr.").[3]

The Court advised the parties that a jury trial would occur on damages.  <u>See</u> Tr. at 3:7-10 (Court).

---

[3]The Court's citations to the transcript of the hearing refer to the court reporter's original, unedited version.  Any final transcript may contain slightly different page and/or line numbers.

Sunrise Tire then addressed the Court. See Tr. at 3:18-21 (Dhaliwal). Sunrise Tire continued to contest its liability, arguing that it "only change[d] lug nuts . . . and beyond that nothing else was done." Tr. at 3:21-23 (Dhaliwal). Sunrise Tire suggested that, if its repairs were defective, the truck would not have been able to travel from California to New Mexico. See Tr. at 4:1-5 (Dhaliwal). The Court responded that, if Sunrise Tire wants to make these arguments, it should have done so "much earlier . . . before we get to the eve of trial . . . ." Tr. at 4:10-16 (Court). Sunrise Tire's counsel, Mr. Dhaliwal, explained that Sunrise Tires had difficulties because of COVID-19, and indicated that he was "not registered in New Mexico as an attorney, so I was always uncomfortable." Tr. at 4:20-5:2 (Dhaliwal). Sunrise Tire continued that it could not find any lawyers willing to "go against Mark Baker," the Plaintiffs' counsel. Tr. at 5:10-17 (Dhaliwal). The Court replied that it had not "heard anyone say they could not get an attorney during the pandemic," and noted that, in fact, "civil numbers were up, people were filing more cases rather than less, and I heard attorneys earned more in the pandemic than ever in their life." Tr. at 5:18-22 (Court). The Court observed that Sunrise Tire's assertion that they could not find an attorney, therefore "rings a little hollow." Tr. at 5:22-25 (Court). Sunrise Tire replied that it was not saying it could not find an attorney because of the pandemic, but rather was arguing that "they didn't have the money to pay an attorney," because "the pandemic screwed up their income." Tr. at 6:1-5 (Dhaliwal).

The Plaintiffs then asserted that it was "way too late" to "lift the default judgment." Tr. at 7:5-10 (Baker). In response to Sunrise Tire's argument that it did not work on the side of the tractor trailer from which the wheel came loose, the Plaintiffs noted that this is "contrary to the testimony of the driver of the tractor trailer." Tr. at 7:16-21 (Court). The Plaintiffs then disagreed with Sunrise Tire's contention that no lawyers were willing to oppose Mr. Baker, the Plaintiffs'

- 14 -

counsel, noting "I certainly have a lot of opposing counsel" and that "it's not hard to find a lawyer in Albuquerque who will defend a trucking company or its principals." Tr. at 7:22-8:2 (Baker). The Plaintiffs also emphasized expert testimony upon which they will rely at trial, which refutes Sunrise Tire's argument "that the truck simply couldn't have gotten from California to New Mexico" with defective lug nuts. Tr. at 8:4-24 (Court, Baker).

The Court then asked the Plaintiffs if their litigation strategy would have differed if Sunrise Tire had initially participated in the case. See Tr. at 9:1-8 (Court). The Plaintiffs argued that they did not take a deposition of the truck driver and did not prepare their expert on the lug nut issue because Sunrise Tire did not respond to the Complaint initially. See Tr. at 9:20-25 (Baker). The Plaintiffs also noted that "there has been no participation" and argued that the Court should not permit Sunrise Tire to take "these steps . . . at the eleventh hour." Tr. at 10:10-14 (Baker). The Court asked the Plaintiffs why they thought Sunrise Tire might have "reappear[ed]." Tr. at 12:6-8 (Court). The Plaintiffs responded that they were unsure, but that perhaps Sunrise Tire "thought they were coming up on the one year anniversary" of the default judgment "and could easily lift it, having sat out for a year . . . and they'd be back at square one, which is clearly not a valid approach to litigation." Tr. at 12:9-15 (Baker). The Court reiterated that this case was not "a good candidate for setting aside" the default judgment, because "there is too much water under the bridge . . . this case is coming to a close . . . ." Tr. at 14:1-3 (Court).

## LAW REGARDING MOTIONS TO RECONSIDER INTERLOCUTORY ORDERS

Considerable confusion exists among the bar regarding the proper standard for a district court to apply when ruling on a motion to reconsider one of its prior "interlocutory" or "interim" orders, i.e., an order that a district court issues while the case is ongoing, as distinguished from a final judgment. This confusion originates from the fact that the Federal Rules of Civil Procedure

do not mention motions to reconsider, let alone set forth a specific procedure for filing them or a standard for analyzing them. A loose conflation in terminology in Servants of the Paraclete v. Does, which refers to rule 59(e) motions -- "motion[s] to alter or amend a judgment" -- as "motions to reconsider,"[4] compounded that baseline confusion. Fed. R. Civ. P. 59(e) (emphasis added); Servants of the Paraclete v. Does, 204 F.3d at 1005.

Final judgments are different from interlocutory orders. See Fed. R. Civ. P. 54(a) ("'Judgment' as used in these rules includes a decree and any order from which an appeal lies.")(emphasis added). In addition to ripening the case for appeal, see 28 U.S.C. § 1291 ("The courts of appeals . . . shall have jurisdiction of appeals from all final decisions of the district courts . . . ."), the entry of final judgment narrows the district court's formerly plenary jurisdiction over the case in three ways. First, for the first twenty-eight days after the entry of judgment, when

---

[4]The Honorable Paul J. Kelly, Jr., United States Circuit Judge for the Tenth Circuit, who authored Servants of the Paraclete v. Does, refers to rule 59(e) motions as "motions to reconsider" several times throughout the opinion. See, e.g., 204 F.3d at 1005. He uses the term "motion to reconsider" as an umbrella term that can encompass three distinct motions: (i) motions to reconsider an interlocutory order, which no set standard governs, save that the district court must decide them "before the entry of . . . judgment," Fed. R. Civ. P. 54(b); (ii) motions to reconsider a judgment made within twenty-eight days of the entry of judgment, which the Servants of the Paraclete v. Does standard governs; and (iii) motions to reconsider a judgment made more than twenty-eight days after the entry of judgment, which rule 60(b) governs. There is arguably a fourth standard for motions to reconsider filed more than a year after the entry of judgment, as three of the rule 60(b) grounds for relief expire at that point.

Much confusion could be avoided by using the term "motion to reconsider" exclusively to refer to the first category, "motion to amend or alter the judgment" exclusively to refer to the second category, and "motion for relief from judgment" exclusively to refer to the third category (and arguable fourth category). These are the terms that the Federal Rules of Civil Procedure -- and other Circuits -- use to describe (ii) and (iii). The Court agrees with Judge Kelly -- and all he likely meant by using motion to reconsider as an umbrella term is -- that, if a party submits a motion captioned as a "motion to reconsider" after an entry of final judgment, the court should evaluate it under rule 59(e) or 60(b), as appropriate, rather than rejecting it as untimely or inappropriate.

the court can entertain motions under rules 50(b), 52(b), 59, and 60, the district court's jurisdiction

trumps that of the Court of Appeals.  <u>See</u> Fed. R. App. P. 4(a)(4)(B).  Even if a party files a notice

of appeal, the Court of Appeals will wait until after the district court has ruled on the post-judgment

motion to touch the case.  <u>See</u> Fed. R. App. P. 4(a)(4)(B).  Second, after twenty-eight days, when

the court may consider motions under rule 60, if a party has filed a notice of appeal, the Court of

Appeals' jurisdiction trumps the district court's, and the district court needs the Court of Appeals'

permission even to grant a rule 60 motion.  Third, after twenty-eight days, if no party has filed a

notice of appeal, district courts may consider motions under rule 60.

Final judgments implicate two important concerns militating against giving district courts

free reign to reconsider their judgments.  First, when a case is not appealed, there is an interest in

finality.  The parties and the lawyers expect to go home, quit obsessing about the dispute, and put

the case behind them, and the final judgment -- especially once the twenty-eight day window of

robust district court review and the thirty-day window of appeal have both closed -- is the

disposition upon which they are entitled to rely.  Second, when a case is appealed, there is the need

for a clean jurisdictional handoff from the district court to the Court of Appeals.  "[A] federal

district court and a federal court of appeals should not attempt to assert jurisdiction over a case

simultaneously," as doing so produces a "danger [that] a district court and a court of appeals w[ill]

be simultaneously analyzing the same judgment."  <u>Griggs v. Provident Consumer Discount Co.</u>,

459 U.S. 56, 58-59 (1982).

The Court of Appeals needs a fixed record on which to base its decisions -- especially given

the collaborative nature of appellate decision-making -- and working with a fixed record requires

getting some elbow room from the district court's continued interference with the case.  The

"touchstone document" for this jurisdictional handoff is the notice of appeal, not the final

judgment, <u>Griggs v. Provident Consumer Discount Co.</u>, 459 U.S. at 58 ("The filing of a notice of appeal is an event of jurisdictional significance -- it confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal."); <u>Garcia v. Burlington N. R.R. Co.</u>, 818 F.2d 713, 721 (10th Cir. 1987)("Filing a timely notice of appeal pursuant to Fed. R. App. P. 3 transfers the matter from the district court to the court of appeals. The district court is thus divested of jurisdiction. Any subsequent action by it is null and void."); <u>Kirtland v. J. Ray McDermott & Co.</u>, 568 F.2d 1166, 1170 (5th Cir. 1978)("[I]t is the filing of the appeal, not the entering of a final judgment, that divests the district court of jurisdiction."), but, because the final judgment starts the parties' thirty-day clock for filing a timely notice of appeal, the Federal Rules and the Tenth Circuit have chosen to curtail the district court's jurisdiction over the case in the roughly month-long period of potentially overlapping trial- and appellate-court jurisdiction that immediately follows the entry of final judgment, <u>see</u> <u>Servants of the Paraclete v. Doe</u>s, 204 F.3d at 1009 (noting that post-final judgment motions at the district court level are "not intended to be a substitute for direct appeal").

  Basically, rather than suddenly divesting the district court of all jurisdiction over the case -- potentially resulting in the district court being unable to rectify easily fixable problems with the final judgment before the case goes to the Tenth Circuit, or even requiring appeal of a case that might otherwise not need to be appealed -- the Federal Rules set forth a jurisdiction phased de-escalation process, wherein the district court goes from pre-final judgment plenary jurisdiction, to limited review for the first twenty-eight days post-final judgment, and, finally, to solely rule 60 review after twenty-eight days. In defining the "limited review" that rule 59(e) allows a district court to conduct in the 28-day flux period, the Tenth Circuit, in <u>Servants of the Paraclete v. Does</u>, incorporated traditional law-of-the-case grounds -- the same grounds that inform whether a court

should depart from an appellate court's prior decision in the same case -- into rule 59(e).  See United States v. Alvarez, 142 F.3d 1243, 1247 (10th Cir. 1998)(departing from the law of the case doctrine in three exceptionally narrow circumstances: "(1) when the evidence in a subsequent trial is substantially different; (2) when controlling authority has subsequently made a contrary decision of the law applicable to such issues; or (3) when the decision was clearly erroneous and would work a manifest injustice")(citation omitted); Servants of the Paraclete v. Does, 204 F.3d at 1012 (incorporating those grounds into rule 59(e)).

Neither of these concerns -- finality nor jurisdictional overlap -- is implicated when a district court reconsiders one of its own interlocutory orders. The Federal Rules do not specifically mention motions to reconsider interlocutory orders, but rule 54(b) makes the following open-ended proclamation about their mutability:

> When an action presents more than one claim for relief -- whether as a claim, counterclaim, crossclaim, or third-party claim -- or when multiple parties are involved, the court may direct entry of a final judgment as to one or more, but fewer than all, claims or parties only if the court expressly determines that there is no just reason for delay.  Otherwise, any order or other decision, however designated, that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities.

Fed. R. Civ. P. 54(b).  Rule 54(b) thus (i) provides that a district court can freely reconsider its prior rulings; and (ii) puts no limit or governing standard on the district court's ability to do so, other than that it must do so "before the entry of judgment."  Fed. R. Civ. P. 54(b).

The Tenth Circuit has not cabined district courts' discretion beyond what rule 54(b) provides: "[D]istrict courts generally remain free to reconsider their earlier interlocutory orders." Been v. O.K. Indus., 495 F.3d at 1225.  In the Tenth Circuit, "law of the case doctrine has no bearing on the revisiting of interlocutory orders, even when a case has been reassigned from one

judge to another." <u>Rimbert v. Eli Lilly & Co.</u>, 647 F.3d 1247, 1252 (10th Cir. 2011)(emphasis added)(citing <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225). In this context, "the doctrine is merely a 'presumption, one whose strength varies with the circumstances.'" <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225 (quoting Avitia v. Metro. Club of Chi., Inc., 49 F.3d 1219, 1227 (7th Cir. 1995)). In short, a district court can use whatever standard it wants to review a motion to reconsider an interlocutory order. It can review the earlier ruling de novo and essentially reanalyze the earlier motion from scratch, it can review the ruling de novo but limit its review, it can require parties to establish one of the law-of-the-case grounds, or it can refuse to entertain motions to reconsider altogether.

The best approach, in the Court's eyes -- and which it announced, as follows, in <u>Anderson Living Tr. v. WPX Energy Prod., LLC</u>, 308 F.R.D. 410, 430-35 (D.N.M. 2015)(Browning, J.) -- is to analyze motions to reconsider differently depending on three factors. <u>Cf.</u> <u>Been v. O.K. Indus., Inc.</u>, 495 F.3d at 1225 ("[T]he doctrine is merely a 'presumption, one whose strength varies with the circumstances.' ")(citation omitted). First, the Court should restrict its review of a motion to reconsider a prior ruling in proportion to how thoroughly the earlier ruling addressed the specific findings or conclusions that the motion to reconsider challenges. How "thoroughly" a point was addressed depends both on the amount of time and energy the Court spent on it, and on the amount of time and energy the parties spent on it -- in briefing and orally arguing the issue, but especially if they developed evidence on the issue. A movant for reconsideration thus faces a steeper uphill challenge when the prior ruling was on a criminal suppression motion, class certification motion, or preliminary injunction,[5] than when the prior ruling is, e.g., a short discovery ruling. The Court

_____

[5]The Court typically makes findings of fact and conclusions of law in ruling on these

should also look, not to the overall thoroughness of the prior ruling, but to the thoroughness with which the Court addressed the exact point or points that the motion to reconsider challenges. A movant for reconsideration thus faces an easier task when he or she files a targeted, narrow-in-scope motion asking the Court to reconsider a small, discrete portion of its prior ruling than when he or she files a broad motion to reconsider that rehashes the same arguments from the first motion, and essentially asks the Court to grant the movant a mulligan on its earlier failure to present persuasive argument and evidence.

Second, the Court should consider the case's overall progress and posture, the motion for reconsideration's timeliness relative to the ruling it challenges, and any direct evidence the parties may produce, and use those factors to assess the degree of reasonable reliance the opposing party has placed in the Court's prior ruling. See 18B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper, Vikram David Amar, Richard D. Freer, Helen Hershkoff, Joan E. Steinman & Catherine T. Struve, Federal Practice & Procedure § 4478.1 (2d ed.)("Stability becomes increasingly

---

motions. At first glance, it appears that the Federal Rules of Civil Procedure set forth additional standards -- beyond that which applies to other interlocutory orders -- for amending findings of fact and conclusions of law:

> **Amended or Additional Findings.** On a party's motion filed no later than 28 days after the entry of judgment, the court may amend its findings -- or make additional findings -- and may amend the judgment accordingly. The motion may accompany a motion for a new trial under Rule 59.

Fed. R. Civ. P. 52(b). This rule appears to limit motions to reconsider orders with findings of fact and conclusions of law to twenty-eight days. The rule's use of the term "entry of judgment," its reference to rule 59, and its adoption of the same time period that applies to motions to alter or amend a judgment, all lead the Court to conclude, however, that rule 52(b) -- and its 28-day time limit -- does not apply to interlocutory orders. The time limit applies only to findings of fact and conclusions of law supporting a case-ending judgment -- such as those entered after a bench trial -- and to those giving rise to an interlocutory appeal that, if filed, divests the district court of its jurisdiction -- such as those entered in support of a preliminary injunction.

important as the proceeding nears final disposition . . . . Reopening should be permitted, however, only on terms that protect against reliance on the earlier ruling."). For example, if a defendant (i) spends tens of thousands of dollars removing legacy computer hardware from long-term storage; then (ii) obtains a protective order in which the Court decides that the defendant need not produce the hardware in discovery; then (iii) returns the hardware to long-term storage, sustaining thousands more in expenses; and (iv) several months pass, then the plaintiffs should face a higher burden in moving the Court to reconsider its prior ruling that they faced in fighting the motion for protective order the first time.

Third, the Court should consider the <u>Servants of the Paraclete v. Does</u> grounds. The Court should be more inclined to grant motions for reconsideration if the movant presents (i) new controlling authority -- especially if the new authority overrules prior law or sets forth an entirely new analytical framework; (ii) new evidence -- especially if the movant has a good reason why the evidence was not presented the first time around; or (iii) a clear indication -- one that manifests itself without the need for in-depth analysis or review of the facts -- that the Court erred.

These three factors should influence the degree to which the Court restricts its review of a prior ruling, but they do not necessarily mean that the Court should always apply a deferential standard of review. The Court should pause before applying a standard of review to its own interlocutory orders that is more deferential than the standard that the Court of Appeals will apply to it, unless the Court concludes that the alleged error in the prior ruling was harmless, or the party moving for reconsideration waived their right to appeal the alleged error by not raising the appropriate argument. Even in circumstances where the Court concludes that it is insulated from reversal on appeal, there are principled reasons for applying a de novo standard. After all, if the Court was wrong in its earlier decision, then, generally speaking, it is unjust to maintain that result

-- although the Court should weigh this injustice against any injustice that would result from upending the parties' reliance on the earlier ruling, which is the balancing test that the three factors above represent.

What the Court means by "restricting its review" is less about applying a deferential standard of review -- although that may be appropriate in some circumstances -- and more about reducing (i) the depth of the Court's analysis the second time around -- thus conserving judicial resources; and (ii) the impositions that relitigation of the prior ruling will impose on the party opposing the motion for reconsideration. The Court should consider the time and expense that the party opposing reconsideration spent in winning the earlier ruling, and should try to prevent that party from having to bear the same impositions again. Basically, even if the Court ultimately analyzes a motion to reconsider under the same standard that it analyzed the motion that produces the earlier ruling, it should analyze the motion in a different way -- one focused on reducing the litigation burdens of the party opposing reconsideration. For example, when a party moves the Court for a preliminary injunction, standard practice is that the Court holds an evidentiary hearing as a matter of course, regardless whether it looks as if the party has a good chance of prevailing. If the party loses and the Court denies the injunction, however, and the party moves for reconsideration, the party should not be entitled to the presumption of an evidentiary hearing merely because he or she received that presumption the first time the Court considered the motion. In light of these statements, it is perhaps better to characterize the increased burden that a movant for reconsideration faces as one of production, and not of persuasion. The Court analyzes motions to reconsider by picking up where it left off in the prior ruling -- not by starting anew. Parties opposing reconsideration can do the same, and they may stand on whatever evidence and argument they used to win the earlier ruling. Movants for reconsideration, on the other hand, carry the full

burden of production: they must persuade the Court, using only the evidence and argument they put before it, that it should change its prior ruling; they must do all of the legwork, and not rely on the Court to do any supplemental fact-finding or legal research; and they must convincingly refute both the counterarguments and evidence that the opposing party used to win the prior ruling and any new arguments and evidence that the opposing party produces while opposing the motion to reconsider. Unlike the motion that produced the prior ruling, a motion to reconsider is not -- and is not supposed to be -- a fair fight procedurally. The deck is stacked against a movant for reconsideration, and if such a movant hopes to prevail, he or she must have not only a winning legal position, but the work ethic and tenacity to single-handedly lead the Court to his or her way of thinking. See Pueblo of Pojoaque v. State, 2017 WL 2266857 (D.N.M. 2017)(Browning, J.).

## LAW REGARDING DEFAULT JUDGMENTS AND THE ENTRY OF DEFAULT UNDER RULE 55

Rule 55 of the Federal Rules of Civil Procedure sets out a two-step process for a default judgment. See; Fed. R. Civ. P. 55; United States v. Rivera, 2015 WL 4042197, at *9-12 (D.N.M. June 30, 2015)(Browning, J.). First, a party must obtain a Clerk's entry of default. See Fed. R. Civ. P. 55(a) ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default."); Watkins v. Donnelly, 551 F. App'x at 958 ("Entry of default by the clerk is a necessary prerequisite that must be performed before a district court is permitted to issue a default judgment."). Second, either the party must request the Clerk to enter default judgment when the claim is for "a sum certain or a sum that can be made certain by computation," Fed. R. Civ. P. 55(b)(1), or, "[i]n all other cases, the party must apply to the court for a default judgment," Fed. R. Civ. P. 55(b)(2).

After entering default judgment, a district court takes all of the well-pleaded facts in a complaint as true. See United States v. Craighead, 176 F. App'x 922, 925 (10th Cir. 2006)[6]; Flaks v. Koegel, at 707 (2d Cir. 1974)("While a default judgment constitutes an admission of liability, the quantum of damages remains to be established by proof unless the amount is liquidated or susceptible of mathematical computation.")(citations omitted)). "If [a] defendant does not contest the amount prayed for in the complaint [by failing to answer] and the claim is for a sum certain or a sum that can be made certain by computation, the judgment generally will be entered for that amount without any further hearing." United States v. Craighead, 176 F. App'x at 925 (alteration in original)(quoting 10A Charles Alan Wright, Arthur R. Miller, Mary Kay Kane, Richard L. Marcus & Adam N. Steinman, Federal Practice & Procedure § 2688 (3d ed. 1998)). See Fed. R. Civ. P. 8(d) ("Averments in a pleading to which a responsive pleading is required, other than those as to the amount of damage, are admitted when not denied in the responsive pleading."). A court may enter a default judgment for a damage award without a hearing if the amount claimed is "'one capable of mathematical calculation.'" Applied Capital, Inc. v. Gibson, 558 F. Supp. 2d 1189, 1202 (D.N.M. 2007)(Browning, J.)(quoting H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d at

---

[6]The Court can rely on an unpublished opinion to the extent its reasoned analysis is persuasive in the case before it. See 10th Cir. R. 32.1(A)("Unpublished opinions are not precedential, but may be cited for their persuasive value."). The Tenth Circuit has stated:

> In this circuit, unpublished orders are not binding precedent, . . . and we have generally determined that citation to unpublished opinions is not favored. However, if an unpublished opinion or order and judgment has persuasive value with respect to a material issue in a case and would assist the court in its disposition, we allow a citation to that decision.

United States v. Austin, 426 F.3d 1266, 1274 (10th Cir. 2005)(citations omitted). The Court relies on United States v. Craighead and other unpublished cases herein for their persuasive value.

145, and citing <u>Venable v. Haislip</u>, 721 F.2d at 300)).  "It is a familiar practice and an exercise of judicial power for a court upon default, by taking evidence when necessary or by computation from facts of record, to fix the amount which the plaintiff is lawfully entitled to recover and to give judgment accordingly."  10A Wright & Miller, <u>supra</u>, § 2688 (citing <u>Pope v. United States</u>, 323 U.S. 1, 12 (1944)).  "If the damages sum is not certain or capable of easy computation, the court may" conduct such hearings or order such references as it deems necessary.  <u>Applied Capital, Inc. v. Gibson</u>, 558 F. Supp. 2d at 1202 (citing <u>Beck v. Atl. Contracting Co.</u>, 157 F.R.D. 61, 64 (D. Kan. 1994)(Lungstrum, J.)).  <u>See</u> Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings or make referrals . . . when, to enter or effectuate judgment, it needs to . . . determine the amount of damages.").

"Default judgments are a harsh sanction."  <u>Ruplinger v. Rains (In re Rains)</u>, 946 F.2d 731, 732 (10th Cir. 1991).  The Court has noted that, "[b]ecause default judgment is a harsh sanction involving a court's power to enter and enforce judgments regardless of the merits of a case, courts do not favor such a sanction 'purely as a penalty for delays in filing or other procedural error.'" <u>Noland v. City of Albuquerque</u>, No. CIV 08-0056 JB/LFG, 2009 WL 2424591, at *1 (D.N.M. June 18, 2009)(Browning, J.)(quoting <u>Ruplinger v. Rains (In re Rains)</u>, 946 F.2d at 733).

> [S]trong policies favor resolution of disputes on their merits: [T]he default judgment must normally be viewed as available only when the adversary process has been halted because of an essentially unresponsive party.  In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights.  The default judgment remedy serves as such a protection.

<u>Ruplinger v. Rains (In re Rains)</u>, 946 F.2d at 732-33 (citations omitted)(internal quotation marks omitted).  <u>See</u> <u>Noland v. City of Albuquerque</u>, 2009 WL 2124591, at *1 (denying motion for default judgment, because the counsel for the defendant City of Albuquerque "entered an

appearance three days after Noland filed his motion for default judgment," and, thus, the Court could not "reasonably say that the City of Albuquerque is an essentially unresponsive party, that the adversary process has been halted, or that Noland faces interminable delay because of the City of Albuquerque's actions").

"The court may set aside an entry of default for good cause, and it may set aside a default judgment under Rule 60(b)." Fed. R. Civ. P. 55(c). "[T]he good cause required by Fed. R. Civ. P. 55(c) for setting aside entry of default poses a lesser standard for the defaulting party than the excusable neglect which must be shown for relief from judgment under Fed. R. Civ. P. 60(b)." Pinson v. Equifax Credit Info. Servs., Inc., 316 F. App'x 744, 750 (10th Cir. 2009)(quoting Dennis Garberg & Assocs., Inc. v. Pack-Tech Int'l Corp., 115 F.3d 767, 775 n.6 (10th Cir. 1997)). See Hunt v. Ford Motor Co., 1995 WL 523646, at *3. The distinction between setting aside an entry of default and setting aside a default judgment "reflects the different consequences of the two events and the different procedures that bring them about." 10A Wright & Miller, supra, § 2692.

> [T]he clerk or the court may enter a default upon the application of the nondefaulting party. The entry simply is an official recognition of the fact that one party is in default, as, for example, for failure to comply with the rules, to appear as scheduled, or to prosecute the case with due diligence. The entry is an interlocutory step that is taken under Rule 55(a) in anticipation of a final judgment by default under Rule 55(b).

> In sharp contrast, a final default judgment is not possible against a party in default until the measure of recovery has been ascertained, which typically requires a hearing, in which the defaulting party may participate; in some situations, a jury trial may be made available to determine an issue of damages. Moreover, the entry of a default judgment is a final disposition of the case and an appealable order.

> . . . .

> Additional differences between relief from the entry of a default and from a default judgment appear in the grounds that will support the motion being granted. Stated generally, the defaulting party is not entitled to relief from a judgment as a matter of right under Rule 60(b). The movant must present a justification

supporting the relief motion and must establish his contentions if challenged. Although whether relief will be granted is a matter within the sound discretion of the trial court, the vacation of a default judgment is subject to the explicit provisions of Rule 60(b), which places additional restraints upon the court's discretion. The motion to set aside a default entry, on the other hand, may be granted for "good cause shown," which gives a court greater freedom in granting relief than is available in the case of default judgments.

10A Wright & Miller, supra, § 2692 (footnotes omitted).

While there are some differences between setting aside the entry of default and setting aside a default judgment, there are some important similarities, including that courts may consider the same factors: whether the party willfully defaulted, whether setting aside the entry of default or default judgment would prejudice the non-movant, and whether the movant has presented a meritorious defense. See Pinson v. Equifax Credit Info Servs., Inc., 316 F. App'x at 750 ("In deciding whether to set aside an entry of default, courts may consider, among other things, 'whether the default was willful, whether setting it aside would prejudice the adversary, and whether a meritorious defense is presented.'")(quoting Dierschke v. O'Cheskey (In re Dierschke), 975 F.2d at 183); United States v. $285,350.00 in U.S. Currency, 547 F. App'x 886, 887 (10th Cir. 2013)("Three requirements must be met when setting aside a default judgment under Rule 60(b): '(1) the moving party's culpable conduct did not cause the default; (2) the moving party has a meritorious defense; and (3) the non-moving party will not be prejudiced by setting aside the judgment.'")(quoting United States v. Timbers Pres., 999 F.2d 452, 454 (10th Cir. 1993), abrogated on other grounds by Degen v. United States, 517 U.S. 820, 825 (1996)). The United States Court of Appeals for the Tenth Circuit has, at times, listed two factors rather than three for the standard in setting aside a default judgment:

Rule 60(b) of the Federal Rules of Civil Procedure permits relief from a final judgment only if the movant can demonstrate justifiable grounds, including mistake, inadvertence, surprise or excusable neglect. In the case of default

> judgments, courts have established the further requirement that a movant demonstrate the existence of a meritorious defense. E.g., Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970). A 60(b) motion thus comprehends two distinct aspects[:] justification for relief and a meritorious defense.

In re Stone, 588 F.2d at 1319. See Sawyer v. USAA Ins. Co., 839 F. Supp. 2d 1189, 1230 (D.N.M. 2012)(Browning, J.)(setting aside a default judgment, because, "when a plaintiff fails to properly serve a defendant, a default judgment is void and should be set aside under rule 60(b)(4)"). "Although how these factors will be evaluated and weighed lies within the discretion of the trial court to a considerable degree, . . . federal courts are willing to grant relief from a default entry more readily and with a lesser showing than they are in the case of a default judgment." 10A Wright & Miller, supra, § 2692 (footnotes omitted). "The standard for setting aside an entry of default under Rule 55(c) is fairly liberal because '[t]he preferred disposition of any case is upon its merits and not by default judgment.'" Crutcher v. Coleman, 205 F.R.D. 581, 584 (D. Kan. 2001)(Vratil, J.)(quoting Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970)). See Applied Capital, Inc. v. Gibson, 2007 WL 5685131, at 20-23 (liberally construing a pro se defendant's motion to dismiss as a motion to set aside the default, but concluding that the pro se defendant did not show good cause for the Court to set aside the entry of default, because, although setting aside the entry of default would not prejudice the plaintiff, the pro se defendant was "fully aware of the need to answer within the given time limitation and chose not to respond timely," and he failed to appear at a hearing to support his allegation that he had a meritorious defense).

## LAW REGARDING RULE 60(b)

Rule 60(b) of the Federal Rules of Civil Procedure allows a court to relieve a party from a judgment or order for "mistake, inadvertence, surprise, or excusable neglect," Fed. R. Civ. P. 60(b)(1), or "any other reason that justifies relief," Fed. R. Civ. P. 60(b)(6). "Rule 60(b) is an

extraordinary procedure permitting the court that entered judgment to grant relief therefrom upon a showing of good cause within the rule." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1444 (10th Cir. 1983). Rule 60(b) "is not a substitute for appeal, and must be considered with the need for finality of judgment." Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444 (citing Brown v. McCormick, 608 F.2d 410, 413 (10th Cir. 1979)). The rule was designed to strike a "delicate balance" between respecting the finality of judgment and, at the same time, recognizing the court's principal interest of executing justice. Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d at 1444. Once a case is "unconditionally dismiss[ed]," the court loses all jurisdiction over the case other than the ability to hear motions under rule 60(b). Smith v. Phillips, 881 F.2d 902, 904 (10th Cir. 1989)("We agree with the Seventh Circuit that '[a]n unconditional dismissal terminates federal jurisdiction except for the limited purpose of reopening and setting aside the judgment of dismissal within the scope allowed by [Fed. R. Civ. P.] 60(b).")(alterations in original).

Motions to obtain relief from a judgment or order based on "mistake, inadvertence, surprise, or excusable neglect" must be brought "within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir. 2006)("[R]elief from judgment for reasons of 'mistake, inadvertence, surprise, or excusable neglect,' must be sought within one year of the judgment."). This deadline may not be extended and is not subject to the court's discretion. See Fed. R. Civ. P. 60(b)(2) ("A court must not extend the time to act under Rules 50(b) and (d), 52(b), 59(b), (d), and (e), and 60(b)."). An appeal's pendency does not toll the time requirement for pursuing a motion under rule 60(b). See Fed. R. Civ. P. 60(c)(1); Griffin v. Reid, 259 F. App'x 121, 123 (10th Cir. 2007)(unpublished); Tool Box, Inc. v. Ogden City Corp., 419

F.3d 1084, 1088 (10th Cir. 2005)("[A]n appeal does not toll or extend the one-year time limit of Rule 60(b)."). No time limit applies to rule 60(b)(6) other than that the motion be made within a reasonable time. <u>See</u> Fed. R. Civ. P. 60(c)(1).

      **1.**        <u>**Rule 60(b)(1).**</u>

      The Tenth Circuit uses three factors to determine whether a judgment may be set aside in accordance with rule 60(b)(1): (i) whether the moving party's culpable conduct caused the default; (ii) whether the moving party has a meritorious defense; and (iii) whether the nonmoving party will be prejudiced by setting aside the judgment. <u>See</u> <u>United States v. Timbers Preserve</u>, 999 F.2d 452, 454 (10th Cir. 1993). Under some circumstances, a party can rely on rule 60(b)(1) to rectify its attorney's mistake or when its attorney acted without its authority. <u>See</u> <u>Yapp v. Excel Corp.</u>, 186 F.3d 1222, 1231 (10th Cir. 1999)("Rule 60(b)(1) motions premised upon mistake are intended to provide relief to a party . . . when the party has made an excusable litigation mistake or an attorney has acted without authority . . . ."). Mistake in this context entails either acting without the client's consent or making a litigation mistake, such as failing to file or comply with deadlines. <u>See</u> <u>Yapp v. Excel Corp.</u>, 186 F.3d at 1231. If the alleged incident entails a mistake, then it must be excusable, meaning that the party was not at fault. <u>See</u> <u>Pioneer Inv. Servs. v. Brunswick Assocs. LP</u>, 507 U.S. 380, 394 (1993)("This leaves, of course, the Rule's requirement that the party's neglect be 'excusable.'"); <u>Cashner v. Freedom Stores, Inc.</u>, 98 F.3d 572, 577 (10th Cir. 1996)("If the mistake alleged is a party's litigation mistake, we have declined to grant relief under Rule 60(b)(1) when the mistake was the result of a deliberate and counseled decision by the party."). <u>Cf.</u> <u>Pelican Prod. Corp. v. Marino</u>, 893 F.2d 1143, 1146 (10th Cir. 1990)(holding attorney carelessness is not a basis for relief under Rule 60(b)(1)).

      Courts will not grant relief when the mistake of which the movant complains is the result

of an attorney's deliberate litigation tactics.  See Cashner v. Freedom Stores, Inc., 98 F.3d at 577.

This rule exists because a party

> voluntarily chose [the] attorney as his representative in the action, and he cannot
> now avoid the consequences of the acts or omissions of this freely selected agent.
> Any other notion would be wholly inconsistent with our system of representative
> litigation, in which each party is deemed bound by the acts of his lawyer agent and
> is considered to have notice of all facts, notice of which can be charged upon the
> attorney.

Pioneer Inv. Servs. v. Brunswick Assocs. LP, 507 U.S. at 397 (quoting Link v. Wabash R.R. Co.,

370 U.S. 626, 633-34 (1962))(internal quotation marks omitted).  The Tenth Circuit has held that

there is nothing "novel" about "the harshness of penalizing [a client] for his attorney's conduct"

and has noted that those "who act through agents are customarily bound," even though, when "an

attorney is poorly prepared to cross-examine an expert witness, the client suffers the

consequences."  Gripe v. City of Enid, Okla., 312 F.3d 1184, 1189 (10th Cir. 2002). The Court

has previously stated:

> There is a tension between how the law treats attorney actions that are without
> authority, thus permitting relief under rule 60(b), and how the law treats those
> attorney actions which are inexcusable litigations decisions, thus failing to qualify
> for relief; although the distinction between those actions may not always be logical,
> it is well established.

Wilson v. Jara, No. CIV 10-0797 JB/WPL, 2012 WL 1684595, at 7 (D.N.M. May 10,

2012)(Browning, J.).

### 2.    Rule 60(b)(6).

Rule 60(b)(6) provides that a court may relieve a party from final judgment, order, or

proceeding for "any other reason that justifies relief."  Fed. R. Civ. P. 60(b)(6).  No time limit

applies to rule 60(b)(6) save that the motion be made within a reasonable time.  See Fed. R. Civ.

P. 60(c)(1).  "Thus, to the extent it is applicable, clause (6) appears to offer a means of escape from

the one-year limit that applies to motions under clauses (1), (2), and (3)." Wright & Miller, supra, § 2864, at 490. In Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. 380 (1993), the Supreme Court reasoned that, to avoid abrogating the one-year time limit for rule 60(b)(1) to (3), rule 60(b)'s "provisions are mutually exclusive, and thus a party who failed to take timely action due to 'excusable neglect' may not seek relief more than a year after the judgment by resorting to subsection (6)." Pioneer Investment Services Co. v. Brunswick Associates Ltd., 507 U.S. at 393 (citing Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. 847, 863 & n.11 (1988)). "If the reasons offered for relief from judgment could be considered under one of the more specific clauses of Rule 60(b)(1)-(5), those reasons will not justify relief under Rule 60(b)(6)." Moore et al., supra, § 60.48[2], at 60-182. Accord Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863 n.11 ("This logic, of course, extends beyond clause (1) and suggests that clause (6) and clauses (1) through (5) are mutually exclusive.").

Rule 60(b)(6) is a "'grand reservoir of equitable power to do justice in a particular case.'" Van Skiver v. United States, 952 F.2d 1241, 1244 (10th Cir. 1991)(quoting Pierce v. Cook & Co., 518 F.2d 720, 722 (10th Cir. 1975)). "The Rule does not particularize the factors that justify relief, but we have previously noted that it provides courts with authority 'adequate to enable them to vacate judgments whenever such action is appropriate to accomplish justice,' while also cautioning that it should only be applied in 'extraordinary circumstances.'" Liljeberg v. Health Servs. Acquisition Corp., 486 U.S. at 863. Generally, the situation must be one beyond the control of the party requesting relief under rule 60(b)(6) to warrant relief. See Ackermann v. United States, 340 U.S. 193, 202 (1950)("The comparison [of prior precedent] strikingly points up the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence. Subsection 6 of Rule 60(b) has

no application to the situation of petitioner.").  Legal error that provides a basis for relief under rule

60(b)(6) must be extraordinary, as the Tenth Circuit discussed in <u>Van Skiver v. United States</u>:

> The kind of legal error that provides the extraordinary circumstances justifying relief under Rule 60(b)(6) is illustrated by <u>Pierce [v. Cook & Co.</u>, 518 F.2d 720, 722 (10th Cir. 1975)(en banc) ]. In that case, this court granted relief under 60(b)(6) when there had been a post-judgment change in the law "arising out of the same accident as that in which the plaintiffs . . . were injured."  Pierce, 518 F.2d at 723. However, when the post-judgment change in the law did not arise in a related case, we have held that "[a] change in the law or in the judicial view of an established rule of law" does not justify relief under Rule 60(b)(6).  <u>Collins v. City of Wichita</u>, 254 F.2d 837, 839 (10th Cir. 1958).

<u>Van Skiver v. United States</u>, 952 F.2d at 1244-45.

"Courts have found few narrowly-defined situations that clearly present 'other reasons

justifying relief.'"  Wright & Miller, <u>supra</u>, § 2864, at 483.  The Supreme Court has expounded:

> To justify relief under subsection (6), a party must show "extraordinary circumstances" suggesting that the party is faultless in the delay. If a party is partly to blame for the delay, relief must be sought within one year under subsection (1) and the party's neglect must be excusable.  In <u>Klapprott</u>, for example, the petitioner had been effectively prevented from taking a timely appeal of a judgment by incarceration, ill health, and other factors beyond his reasonable control. Four years after a default judgment had been entered against him, he sought to reopen the matter under Rule 60(b) and was permitted to do so.

<u>Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd.</u>, 507 U.S. 380, 393 (1993)(citing <u>Liljeberg v.</u>

<u>Health Servs. Acquisition Corp.</u>, 486 U.S. at 863 & n.11; <u>Ackerman v. United States</u>, 340 U.S. at

197-200; and <u>Klapprott v. United States</u>, 335 U.S. 601, 613-614 (1949)).  <u>See</u> <u>Gonzalez v. Crosby</u>,

545 U.S. 524, 535 (2005)("[O]ur cases have required a movant seeking relief under Rule

60(b)(6) to show 'extraordinary circumstances' justifying the reopening of a final judgment.")(no

citation for quotation).  In <u>Gonzalez v. Crosby</u>, the Supreme Court found a change in the law during

the pendency of a habeas petition was not an extraordinary circumstance.  <u>See</u> 545 U.S. at 537.

When the Supreme Court first addressed rule 60(b)(6) a year after it was introduced to the

federal rules, while the Justices were sharply divided on other issues, no dispute arose from Justice Black's statement: "[O]f course, the one year limitation would control if no more than 'neglect' was disclosed by the petition. In that event the petitioner could not avail himself of the broad 'any other reason' clause of 60(b)." Klapprott v. United States, 335 U.S. at 613. See Wright & Miller, supra, § 2864, at 493. Examples where courts apply rule 60(b)(6) include "settlement agreements when one party fails to comply" and courts use the rule "to return the parties to the status quo," or in cases where fraud is used by a "party's own counsel, by a codefendant, or by a third-party witness," which does not fit within rule 60(b)(3)'s provision for fraud by an adverse party. Wright & Miller, supra, § 2864, at 485, 487. The most common application is to grant relief "when the losing party fails to receive notice of the entry of judgment in time to file an appeal." Wright & Miller, supra, § 2864, at 488. When moving for relief pursuant to rule 60(b)(6), it is not enough to argue the same issues that a court has already addressed. See Pyeatt v. Does, 19 F. App'x 785, 788 (10th Cir. 2001)("[A] motion to reconsider [that] simply reasserts information considered by the district court in its initial determination . . . does not meet the extraordinary circumstances standard required for Rule 60(b)(6) relief.").

## LAW REGARDING JURY TRIALS FOLLOWING A DEFAULT JUDGMENT

Rule 38(d) provides that, once made, "a demand for trial by jury . . . may not be withdrawn without the consent of the parties." Fed. R. Civ. P. 38(d). The Court discussed the right to a jury trial after entry of default in Mitchell v. Bd. of Cty. Comm'rs, CIV 05-1155, 2007 WL 2219420, at *11-13 (D.N.M. May 9, 2007)(Browning, J.). "The Court notes that many cases have held 'that the protection of Rule 38(d) is extended to the defendant after the entry of default, when Rule 55(b)(2) requires a determination of damages.'" Mitchell v. Bd. of Cty. Comm'rs, 2007 WL 2219420, at *12 (quoting Kormes v. Weis, Voisin & Co., Inc., 61 F.R.D. 608, 610 (E.D. Pa.

1974)(Fogel, J.)(ruling that the jury demand associated with the damages hearing could not be unilaterally withdrawn in a case where the defendant made an appearance), and citing Bass v. Hoagland, 172 F.2d 205 (5th Cir. 1949)).  The Court held that rule 38(d)'s plain language requires that the party against whom default is entered must give his or her consent to allow the other party to withdraw a jury demand.  See Mitchell v. Bd. of Cty. Comm'rs, 2007 WL 2219420, at *11-13.

Rule 54(d)(1) of the Federal Rules of Civil Procedure provides that, "[u]nless a federal statute, these rules, or a court order provides otherwise, costs -- other than attorney's fees -- should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1).  A district court has broad discretion in deciding whether to award costs.  See Howell Petroleum Corp. v. Samson Resources Co., 903 F.2d 778, 783 (10th Cir. 1990).  There are, however, some limitations on a district court's discretion.  See Cantrell v. Int'l Broth. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d 456, 458 (10th Cir. 1995).  First, rule 54 creates a presumption that a court will award costs to a prevailing party.  See Cantrell v. Int'l Broth. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d at 458-59 ("[I]t is well-established that Rule 54 creates a presumption that the district court will award costs to the prevailing party.").  Second, if a court chooses not to award costs to a prevailing party, it must provide a valid reason for doing so.  See Cantrell v. Int'l Broth. of Elec. Workers, AFL-CIO, Local 2021, 69 F.3d at 459.

A district court has discretion in deciding whether to award costs to a party that achieves only partial success in some circumstances.  See Howell Petroleum Corp. v. Samson Res. Co., 903 F.2d at 783.  In Roberts v. Madigan, 921 F.2d 1047 (10th Cir. 1990), the plaintiffs appealed a district court decision to award the defendants their entire costs under rule 54(d), because the defendants had not prevailed on all claims.  See Roberts v. Madigan, 921 F.3d at 1058.  The Tenth Circuit held that a district court does not abuse its discretion when it awards full costs to a party

who prevails on the majority of claims and the central claims at issue.  See Roberts v. Madigan, 921 F.3d at 1058.  Thus, the Tenth Circuit affirmed the district court's ruling, basing its holding "on the broad discretion of the district court" to award costs.  Roberts v. Madigan, 921 F.3d at 1058.  The Tenth Circuit also noted that other Courts of Appeals have upheld district court awards of full costs when a party prevailed on only part of its case.  See Roberts v. Madigan, 921 F.3d at 1058 (citing United States v. Mitchell, 580 F.2d 789, 793 (5th Cir. 1978), and K-2 Ski Co. v. Head Ski Co., Inc., 506 F.2d 471, 477 (9th Cir. 1974)).  In Haynes Trane Service Agency, Inc. v. American Standard, Inc., 573 F.3d 947 (10th Cir. 2009), the Tenth Circuit held that a district court did not abuse its discretion in awarding costs to the defendant where the defendant was unsuccessful on each of its counterclaims, but the plaintiff was similarly unsuccessful on each of its claims.  See Haynes Trane Service Agency, Inc. v. American Standard, Inc., 573 F.3d at 967.  It held that "[i]n a case like this in which all claims and counterclaims have failed, costs may be awarded to the counterclaimant if it successfully fend[ed] off a large claim . . . despite failure to prevail on a [smaller] counterclaim."  Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc., 573 F.3d at 967.

## LAW REGARDING DEFAULT JUDGMENT AND DAMAGES

In the case of a party's motion for a for a default judgment, the Court may enter judgment for liquidated damages, but will need a hearing for unliquidated damages.  Rule 55(b)(2) of the Federal Rules of Civil Procedure provides:

> If, in order to enable the court to enter judgment or to carry it into effect, it is necessary to take an account or to determine the amount of damages or to establish the truth of any averment by evidence or to make an investigation of any other matter, the court may conduct such hearings or order such references as it deems necessary.

Fed. R. Civ. P. 55(b)(2).  Similarly, Rule 1-055B of the New Mexico Rules of Civil Procedure,

and established case law, "clearly states that the trial court must hold a hearing to determine the amount of any unliquidated damages before it may enter a default judgment." DeFillippo v. Neil, 2002-NMCA-085, ¶ 19, 132 N.M. 529, 51 P.3d 1183, 1188 (citing Armijo v. Armijo, 1982-NMCA-124, ¶¶ 12-13, 98 N.M. 518, 520, 650 P.2d 40, 42 ("[W]here the claim for damages is unliquidated, it would be an abuse of discretion not to have a hearing and to put plaintiff to the test of presenting evidence to support the claim for damages.")).

1.    **New Mexico Law.**

With respect to awarding damages upon the issuance of a default judgment, New Mexico and federal law are essentially the same. While rule 1-055B does not expressly require that notice of such a hearing be given to the defaulting defendant, "the damages hearing must be regarded as a hearing on the application for default judgment and [ ] written notice must be given if the [defaulting] party has appeared in the action." Rodriguez v. Conant, 1987-NMSC-0040, ¶ 15, 105 N.M. 746, 749, 737 P.2d 527, 530. At a hearing to assess damages after the entry of a default, the defaulting defendant has the right to cross-examine the plaintiff's witnesses and to introduce affirmative evidence on the mitigation of damages. See Gallegos v. Franklin, 1976-NMCA-019, ¶ 40, 89 N.M. 118, 123, 547 P.2d 1160, 1165. "A punitive damage claim is not admitted by a default. Neither is punitive damages provided for in Rule 55(b)." Gallegos v. Franklin, ¶ 49, 89 N.M. at 125, 547 P.2d at 1167 (remanding to the trial court to hold a hearing at which the parties may present evidence regarding compensatory and punitive damages).

2.    **Federal Law.**

"A court may enter a default judgment without a hearing only if the amount claimed is a liquidated sum or one capable of mathematical calculation." Hunt v. Inter-Globe Energy, Inc., 770 F.2d 145, 148 (10th Cir. 1985)(citing Venable v. Haislip, 721 F.2d 297, 300 (10th Cir. 1983)). If

the damages sum is not certain or capable of easy computation, the court may hold whatever hearing or inquiry it deems necessary. See Beck v. Atlantic Contracting Co., 157 F.R.D. at 64. "Similarly, attorney's fees may not be awarded without a hearing to determine the amount." Hunt v. Inter-Globe Energy, Inc., 770 F.2d at 148.

"Entry of default precludes a trial on the merits." Olcott v. Delaware Flood Co., 327 F.3d 1115, 1119 n. 3 (10th Cir. 2003). Rule 55(b)(2) does not contain an inherent jury requirement; rather, it preserves the right to a jury only when statute requires. See Olcott v. Delaware Flood Co., 327 F.3d at 1124. At least where the parties have not requested a jury before entry of default, the "[d]efendants do not have a constitutional right to a jury trial following entry of default." Olcott v. Delaware Flood Co., 327 F.3d at 1124. See Mitchell v. Bd. of County Comm'rs of the County of Santa Fe, No. CIV 05-1155 JB/ALM, 2007 WL 2219420, at *18-23 (D.N.M. May 9, 2007)(Browning, J.).

Regarding punitive damages, "[a] plaintiff cannot satisfy the certainty requirement simply by requesting a specific amount. [The plaintiff] must also establish that the amount requested is reasonable under the circumstances." Beck v. Atlantic Contracting Co., 157 F.R.D. at 65. A damages hearing may not be required before entering a punitive damages award, however, when the court is familiar with the defendant's conduct and otherwise has sufficient information with which to make a reasonable determination. See James v. Frame, 6 F.3d 307, 310-11 (5th Cir. 1993). With regard to multiple defendants, "when one of several defendants who is alleged to be jointly liable defaults, judgment should not be entered against him until the matter has been adjudicated with regard to all defendants, or all defendants have defaulted" -- this avoids inconsistent liability determinations among joint tortfeasors. H.B. Hunt v. Inter-Globe Energy, Inc., 770 F.2d at 147.

## ANALYSIS

The Court has entered Default Judgment against Sunrise Tire.  <u>See</u> Default Judgment at 1-2.  Although rule 55(c) of the Federal Rules of Civil Procedure allows the Court to set aside the Default Judgment for "good cause," the Court will not set aside the Default Judgment in this case.  Fed. R. Civ. P. 55(c).[7]  Sunrise Tire contends that "its failure to file a response was excusable,

---

[7]The Court will analyze Sunrise Tire's Default Motion under rule 55(c), because the Default Judgment was an interlocutory order.  Sunrise Tire cites both rule 55(c) and rule 60(b) in its motion, <u>see</u> Default Motion at 2, 4, while the Plaintiffs insist that rule 60(b) should apply here, <u>see</u> Response at 6.  Rule 55(c) states that a court "may set aside an entry of default for good cause, and it may set aside a final default judgment under Rule 60(b)."  Fed. R. Civ. P. 55(c).  Here, the Clerk of Court filed an entry of default, and the Court entered judgment as to liability in a document entitled "Default Judgment."  Default Judgment at 1.  The parties are confused whether the Court's "Default Judgment" regarding liability falls under the standard for an "entry of default" or the standard for a "final default judgment," and the Tenth Circuit has not addressed the issue.  Fed. R. Civ. P. 55(c).  <u>See</u> Default Motion at 2, 4; Response at 6.  In this case, the Default Judgment granted the Plaintiffs' motion for default judgment on liability, but the Default Judgment is not a final judgment, because, among other reasons, the issue of damages must still be decided in the upcoming jury trial.  The Court concludes that the "good cause" standard applies, because the Default Judgment is an interlocutory order.  <u>See</u> <u>Dassault Systemes, SA v. Childress</u>, 663 F.3d 832, 840 (6th Cir. 2011)("An order granting default judgment without any judgment entry on the issue of damages is no more than an interlocutory order to which Rule 60(b) does not yet apply.");  <u>Anheuser Busch, Inc. v. Philpot</u>, 317 F.3d 1264, 1267 (11th Cir. 2003)(holding that a default judgment as to liability "was not a final default judgment, as it provided neither relief nor damages," and, therefore, the court could set aside the default judgment under rule 55(c) for good cause).  Other judges in the District of New Mexico have reached the same conclusion.  <u>See, e.g.</u>, <u>Christensen v. Fin. Credit Serv., Inc.</u>, No. CIV 15-134 KG/LF, 2016 WL 9819536, at *2 (D.N.M. Aug. 10, 2016)(Gonzales, J.)("Default Judgment on Liability is not a final default judgment, because damages have yet to be finally determined.  Hence, the Default Judgment on Liability is subject to the 'good cause' standard articulated in Fed. R. Civ. P. 55(c) for deciding whether to set aside an entry of default.");  <u>Tilga v. United States</u>, No. CIV 14-0256 JAP/RHS, 2015 WL 13667048, at *3 (D.N.M. Jan. 2, 2015)(Parker, J.)("Rule 55(c) provides that a court may set aside an entry of default for 'good cause.'  Because the Default Judgment did not contain certification language in accordance with Rule 54(b), it was not a final judgment.  Thus, Rule 60(b) is not implicated.");  <u>Roberson v. Farkas</u>, No. CIV 09-0795 JCH/WDS, 2011 WL 13117113, at *3 (D.N.M. Sept. 30, 2011)(Herrera, J.)("[W]hile the Court may have inadvertently caused confusion by entering an order of default judgment on liability prior to a determination of damages, this was an interlocutory order, and it is subject to revision based on an analysis using the standards of Rule 55(c).").  The Court considers largely the same factors under both rule 60(b)

because it could not obtain the services of a lawyer for various reasons to file a response to this instant lawsuit and to represent the Defendant." Default Motion at 2. Specifically, Sunrise Tire argues that its "inability to retain a lawyer, covid 19, and subsequent inability to pay the retainer to retain a lawyer does constitute an inadvertent mistake and excusable neglect." Default Motion at 7. The Court relies upon three factors when evaluating whether Sunrise Tire has met rule 55(c)'s good cause standard and, therefore, it should set aside the Default Judgment in this case: (i) "whether the default was the result of" the defendant's "culpable conduct"; (ii) "whether the defendant presented a meritorious defense"; and (iii) "whether the plaintiff would be prejudiced if the default should be set aside." Hunt v. Ford Motor Co., 65 F.3d 178 (10th Cir. 1995).

Here, the Court will not set aside the Default Judgment, because: (i) the Court can "reasonably infer" that Sunrise Tire "made a conscious decision not to defend" this action, Cessna Fin. Corp. v. Bielenberg Masonry Contracting, Inc., 715 F.2d 1442, 1446-47 (10th Cir. 1983)("Cessna"); (ii) Sunrise Tire has not presented a meritorious defense, because it has not provided any evidence in support of its contention that it did not change the lug nuts on the wheel

---

and the "good cause" test, but the "good cause" test is more forgiving to the Defendants. See United States v. Timbers Pres., Routt Cty., Colo., 999 F.2d at 454 (noting that rule 55(c) "invokes" rule 60(b)'s standards); Chrysler Credit Corp. v. Macino, 710 F.2d 363, 368 (7th Cir. 1983)("Although the elements for relief under Rule 55(c) and Rule 60(b) are substantially the same, the standards are applied more stringently when considering a motion to vacate a default judgment under Rule 60(b)."). Accordingly, because the Court denies the Default Motion, even if the Court were to analyze the Default Motion under rule 60(b), the outcome would remain unchanged. See Wright & Miller, supra, § 2694 ("[A]ny showing sufficient to justify relief under Rule 60(b) should qualify as 'good cause' for purposes of reopening a default entry. Conversely, some demonstrations of 'good cause' may be inadequate to justify disturbing a final judgment, even if it is a default judgment.").

that struck B. Granger, see Default Motion at 2; and (iii) the Plaintiffs would be prejudiced if the Court set aside the Default Judgment, because allowing Sunrise Tire to re-enter the case would increase litigation costs, prolong the litigation, and require the Plaintiffs to obtain expert witnesses on the issue of Sunrise Tire's liability on the eve of trial. Consequently, the Court will not allow Sunrise Tire to re-enter this litigation at the eleventh hour, because the Court "must hold parties and their attorneys to a reasonably high standard of diligence in observing the . . . rules of procedure." Cessna, 715 F.2d at 1444.

I.    **SUNRISE TIRE'S MADE A CONSCIOUS DECISION NOT TO DEFEND THIS CASE BASED UPON ITS ALLEGED FINANCIAL SITUATION AND ITS APPREHENSION REGARDING PLAINTIFFS' COUNSEL.**

As the Court noted at the hearing, Sunrise Tire's assertion that it could not find an attorney "rings . . . hollow." Tr. at 5:22-25 (Court). Sunrise Tire argues that it was unable to find an attorney for two reasons: (i) that Sunrise Tire lacked money to pay an attorney, because "the pandemic screwed up their income," Tr. at 6:1-5 (Dhaliwal); and (ii) that Sunrise Tire could not find any lawyers willing to "go against Mark Baker," the Plaintiffs' counsel, Tr. at 5:10-17 (Dhaliwal). The Court concludes that Sunrise Tire's alleged inability to find an attorney does not negate the Court's conclusion that Sunrise Tire is culpable here, because Sunrise Tire provides no evidence in support of their alleged inability to hire an attorney, and there is evidence that contradicts directly its position.

First, Sunrise Tire provides no support, such as financial documentation, demonstrating how the pandemic affected its income. Moreover, it provides no details regarding how the pandemic impacted their income, stating only that "Covid 19 killed our business, and then we were no longer in a position to hire an attorney." Declaration of Defendant's Officer, Gurkirpal Pattar in Support of Motion to Set Aside Default at 3, ¶ 4, filed January 6, 2021 (Doc. 98)("Pattar Decl.").

If the Court allowed this bare, conclusory declaration to be enough to lift its entries of default, the Court would lift entries of default whenever they are opposed. In addition, Goodwill Trucking removed this action federal court on October, 24, 2019, and the Court granted the Plaintiffs' request for default judgment as to Sunrise Tire on January 29, 2020, but the COVID-19 pandemic did not impact significantly the United States until March, 2020. There is, therefore, no connection between the COVID-19 pandemic and Sunrise Tire's income during the relevant time period of this litigation. Accordingly, the Court concludes that Sunrise Tire's contention that, because of COVID-19, it could not afford to hire an attorney, is unsupported by evidence and it is culpable for its decision not to participate actively in this litigation.

Second, the Court does not believe Sunrise Tire's contention that it could not find any lawyers willing to go against Mr. Baker, the Plaintiffs' counsel. See Tr. at 5:10-17 (Dhaliwal); Pattar Decl. ¶ 3, at 3 ("Some law firms refused to take our case because they did not want to go against the law firm representing the Plaintiffs."). To date, Mr. Baker has appeared in the District of New Mexico in 132 cases. In the present case, most of the other Defendants have found local counsel to represent them. Likewise, in another civil matter currently pending before the Court, Mr. Baker represents the plaintiffs, yet the defendant has obtained legal representation. See E.S. Distribution Inc. v. Hangtime LLC, No. CIV 20-1221 JB/CG (attorneys representing Defendant Hangtime LLC where Mr. Baker represents the Plaintiffs). There are many other cases in which defendants in the District of New Mexico have found counsel willing to represent them against Mr. Baker. See, e.g., Tafoya v. New Prime, Inc., No. CIV 16-0458 KG/KBM (attorneys represented Defendants New Prime, Inc., Jeremy Scudder, and New Mexico Department of Transportation where Mr. Baker represented the Plaintiffs); ValueOptions of New Mexico, Inc. v. Psychiatric Solutions, Inc., No. CIV 09-0154 MCA/WPL (attorneys represented Defendants

Psychiatric Solutions, Inc., BHC Mesilla Valley Hospital, and Peak Behavioral Health Services where Mr. Baker represented Plaintiff ValueOptions of New Mexico, Inc.). Sunrise Tire's allegation that it could not find a law firm willing to go against Mr. Baker lacks a sound basis in the relevant facts -- this case contradicts their contention, and other pending and past cases in the District of New Mexico also do not support their contention. "[A] workable system of justice requires that litigants not be free to appear at their pleasure." Cessna, 715 F.2d at 1444. The Court, therefore, cannot conclude soundly that Sunrise Tire's decision not to participate in this litigation entitles Sunrise Tire to relief from the Default Judgment. See Fed. R. Civ. P. 55(c).

## II.    SUNRISE TIRE HAS NOT PRESENTED A MERITORIOUS DEFENSE, BECAUSE IT PROVIDES NO FACTUAL BASIS OR EVIDENTIARY SUPPORT FOR ITS CONTENTIONS.

"[T]o avoid frivolous litigation in default judgment cases, 'courts have established the further requirement that a movant demonstrate the existence of a meritorious defense.'" Cessna, 715 F.2d at 1445 (quoting Olson v. Stone, 588 F.2d 1316, 1319 (10th Cir. 1978)). As the movant, Sunrise Tire bears the burden of establishing a meritorious defense. See Marcus Food Co. v. DiPanfilo, 671 F.3d 1159, 1172 (10th Cir. 2011). To establish a meritorious defense, "general denials or conclusory statements that a defense exists" are insufficient; rather, the movant must present "some factual basis for the supposedly meritorious defense." Wright & Miller, supra, § 2697. See Gomes v. Williams, 420 F.2d 1364, 1366 (10th Cir. 1970)("[A] bald allegation, without the support of facts underlying the defense, will not sustain the burden of the defaulting party."). Moreover, "for a defense to be meritorious, it needs to be of such merit as to allow the Court to reasonably infer that allowing the defense to be litigated could foreseeably alter the outcome of the case." Applied Cap., Inc. v. Gibson, No. CIV 05-0098 JB/ACT, 2007 WL 5685131, at *21 (D.N.M. Sept. 27, 2007)(Browning, J.). Here, in the Default Motion, Sunrise Tire

contends that it has two meritorious defenses: (i) that it "never worked on the side of the truck tires that broke and cause [sic] the death of Ms. Barbara Granger," Default Motion at 2; and (ii) that the "truck simply could not have travelled to New Mexico if the job done by Defendant was less than acceptable by industry standards. In other words, if the workmanship was bad or shoddy," Default Motion at 6. Sunrise Tire also attached a declaration from Sunrise Tire's Secretary, Pattar, in which Pattar insists that Sunrise Tire:

> knew we had good defense because we never worked on the side of the truck tires that broke and caused the instant accident. We worked on the other side. This can be confirmed independently as well. If our job was defective, the truck could not have travelled to New Mexico.

Pattar Dec. ¶¶ 5-6, at 3. Sunrise Tire attaches no other evidence to its Default Motion, nor does it provide any information on which tires it worked. See Default Motion at 1-7. This self-serving affidavit, without more, does not allow the Court to "reasonably infer that allowing the defense to be litigated could foreseeably alter the outcome of the case." Applied Cap., Inc. v. Gibson, 2007 WL 5685131, at *21. Sunrise Tire may have pointed to a defense, but they have given no evidence that it is a meritorious defense. Consequently, Pattar's affidavit and the single sentence in Sunrise Tire's briefing is insufficient to present a meritorious defense, particularly given that, here, Sunrise Tire bears the burden. See Gomes v. Williams, 420 F.2d at 1366. The Court therefore concludes that Sunrise Tire has not met its burden in demonstrating good cause under rule 55(c), because it has presented only "bald allegation[s]," Gomes v. Williams, 420 F.2d at 1366, rather than a "factual basis for the supposedly meritorious defense," Wright & Miller, supra, § 2697.

**III.    ALLOWING SUNRISE TIRE TO RE-ENTER THIS CASE WOULD PREJUDICE THE PLAINTIFFS, BECAUSE RE-ENTRY WOULD DELAY AND SUBSTANTIALLY INCREASE THIS LITIGATION'S COSTS.**

In the Default Motion, Sunrise Tire asserts only that it "is not aware of any prejudice to the

Plaintiffs . . . ."  Default Motion at 6.  See Default Motion at 7 ("It did not create any prejudice to Plaintiffs.").  Sunrise Tire does not explain why or how its decision not to participate in this litigation for approximately sixteen months from the date that the Plaintiffs served it with the Complaint does not prejudice the Plaintiffs.  See Motion for Default at 1 (noting that the Plaintiffs served process on Sunrise Tire on September 11, 2019).  Here, Sunrise Tire's more than "eleven-month delay . . . was unreasonable."  Mullin v. High Mountain, 182 F. App'x 830, 832 (10th Cir. 2006).

In Applied Capital, the Court addressed a similar situation.  See 2007 WL 5685131, at *21.  There, the plaintiffs filed suit on January 28, 2005.  See 2007 WL 5685131, at *21.  The defendant did not answer the Complaint.  See 2007 WL 5685131, at *21.  The Clerk of the Court entered default on September 20, 2006.  See 2007 WL 5685131, at *21.  The defendant "did not file any document with the Court until almost five months after the entry of default against him" on February 12, 2007.  2007 WL 5685131, at *21.  The Court noted that the "litigation has been long and complicated," and that the defendant's "failure to comply with Court deadlines has contributed to the complication and duration of this suit."  2007 WL 5685131, at *21.  The Court explained that, if it "were to set aside the default, the duration and complication of this case could be exacerbated."  2007 WL 5685131, at *21.  The Court continued that the plaintiff "could incur further legal fees and be forced to prolong its ability to recover from" the defendant "beyond the two and half years it has already spent in this litigation."  2007 WL 5685131, at *21.  Accordingly, the Court concluded that the plaintiff "could be prejudiced by setting aside the entry of default." 2007 WL 5685131.  Nevertheless, because the plaintiff had "not moved for a default judgment and has instead sought a summary judgment," the Court held that the plaintiff would not "suffer prejudice, because it seeks a judgment on the merits rather than a judgment by default."  2007 WL

5685131, at *21.

Here, the Plaintiffs filed this case in State court on August 8, 2019. <u>See</u> Complaint at 1. Like the defendant in <u>Applied Capital</u>, Sunrise Tire has not filed an answer to the Complaint. <u>See</u> 2007 WL 5685131, at *21. Also like <u>Applied Capital</u>, in this case, the Clerk of the Court entered default against Sunrise Tire on December 6, 2019. <u>See</u> Sunrise Default Entry at 1. The Court then entered Default Judgment as to liability on January 29, 2020. <u>See</u> Default Judgment at 1-2. Sunrise Tire, therefore, did not file anything with the Court until nearly a year after its Default Judgment and more than a year after the Entry of Default, on January 6, 2021. <u>See</u> Default Motion at 1. <u>Cf.</u> <u>Pinson v. Equifax Credit Info. Servs., Inc.</u>, 316 F. App'x 744, 750 (10th Cir. 2009)(setting aside an entry of default where the defendant "evidenced its good faith by submitting its motion to set aside the default on May 7, 2007, just six days after default was entered on May 1, 2007"). Here, the litigation has gone on longer and Sunrise Tire has caused more delay than did the defendant in <u>Applied Capital</u>. <u>See</u> 2007 WL 5685131, at *21; Default Judgment at 1-2. As in <u>Applied Capital</u>, this litigation has already been "long and complicated," encompassing nearly three years and including thirteen defendants, and Sunrise Tire's "failure to comply with Court deadlines has contributed to the complication and duration of this suit." 2007 WL 5685131, at *21. <u>See</u> Default Judgment at 1-2. Although in <u>Applied Capital</u>, only the Clerk of the Court had filed an entry of default, here, the Court entered Default Judgment in January, 2020, and the case is further along than the litigation in <u>Applied Capital</u>. <u>See</u> 2007 WL 5685131, at *21; Default Judgment at 1-2. Also, unlike the plaintiff in <u>Applied Capital</u>, here, the Plaintiffs have sought default judgment, rather than judgment on the merits. <u>See</u> 2007 WL 5685131, at *21.

The Court concludes that, if it "were to set aside the default, the duration and complication of this case" would "be exacerbated." 2007 WL 5685131, at *21. As the Plaintiffs note, because

this case is a wrongful death suit, which the decedent's family brought, allowing Sunrise Tire to "drag[] the case out" would increase the already significant "emotional toll" this litigation has taken on the Plaintiffs. Response at 14. Moreover, the Plaintiffs' litigation strategy, for nearly a year, has centered around the idea that the Plaintiffs would not need to demonstrate Sunrise Tire's liability. See Response at 14. As the Plaintiffs note, their "[e]xperts will need to re-engage in the litigation to address Sunrise's liability when that is [a] matter the default judgment resolved last January." Response at 14. The Court concludes, therefore, that, if it allows Sunrise Tire to re-enter this litigation, the Plaintiffs "could incur further legal fees and be forced to prolong" their "ability to recover from" Sunrise Tire "beyond the" nearly three years they have "already spent in this litigation." 2007 WL 5685131, at *21.

Furthermore, the Court is concerned that, even if it allowed Sunrise Tire to re-enter the litigation, Sunrise Tire still would not participate actively in a manner which would allow the litigation to proceed in a timely way. The Court recently held a pretrial conference, and Sunrise Tire did not appear, nor did it inform the Court that it did not plan to attend the pretrial conference. This lack of contact resulted in a delay of nearly twenty minutes while the Court and the Plaintiffs waited for Sunrise Tire's counsel to appear -- after creating a conference line to allow Sunrise Tire's counsel to participate -- and did not use efficiently the Court staff's time in attempting to contact Sunrise Tire's counsel:

THE COURT: All right you can go ahead and try to contact Mr. Dhaliwal and we'll go ahead and get started.

. . . .

And we have the . . . conference line on. And I don't see anybody else in the courtroom here and I don't know if Mr. Dhaliwal is going to appear. In the past he's asked for some Zoom information, but he didn't this time, so we assume that if he was going to participate, he'd do so by phone. It is 9:19 so we are starting

> late, and he has not contacted us, but we'll ask Ms. Rotonda, [the Court's
> Courtroom Deputy Clerk], to try to work to reach him.

Draft Transcript of a Hearing at 1:25-2:19 (taken June 18, 2021)(Court).[8]  Moreover, although the

D.N.M. LR-Civ. do not require Sunrise Tire to file a Reply on the present Default Motion, that

Sunrise Tire chose not to file a Reply does little to reassure the Court that it intends to participate

actively in this litigation.  In general, Sunrise Tire's strategy seems to be a misguided hope that, if

it ignores this case long enough, it will simply go away.  The Court will not allow this strategy to

succeed, and  "there is simply nothing which offends justice about the denial of a motion to set

aside a default judgment where the moving party, through counsel, has failed to comply with the

procedural rules of the court." Pelican Prod. Corp. v. Marino, 893 F.2d 1143, 1147 (10th Cir.

1990).  Here, "'the adversary process has been halted because of an essentially unresponsive

party,'" Sunrise Tire.  In re Rains, 946 F.2d at 731-32 (quoting H. F. Livermore Corp. v.

Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)("H.F. Livermore")).  The

Court needs to wrap up this old case, where all other parties have settled or otherwise gone away.

See, e.g., Stipulated Order of Partial Dismissal with Prejudice at 1-2.  Accordingly, "'the diligent

party,'" here, the Plaintiffs, "'must be protected lest [t]he[y] be faced with interminable delay and

continued uncertainty as to [their] rights.  The default judgment remedy serves as such a

protection.'"  In re Rains, 946 F.2d at 732-33 (quoting H. F. Livermore, 432 F.2d at 691).  The

Court concludes, therefore, that the "delay of almost a year substantially prejudiced the" Plaintiffs

and declines to set aside the default judgment.  Mullin v. High Mountain, 182 F. App'x at 834.

---

[8]The Court's citations to the transcript of the hearing refer to the court reporter's original,
unedited version.  Any final transcript may contain slightly different page and/or line numbers.

**IT IS ORDERED** that the Motion to Set Aside Default, filed January 6, 2021 (Doc. 98), is denied.

_____
UNITED STATES DISTRICT JUDGE

*Counsel*:

Mark T. Baker
Matthew Beck
Elizabeth Radosevich
Peifer, Hanson, Mullins & Baker, P.A.
Albuquerque, New Mexico

    *Attorneys for the Plaintiffs*

Rattan Dev Singh Dhaliwal
Dhaliwal Law Group, Inc.
Santa Clara, California

    *Attorneys for Defendant Sunrise Tire and Lube Service, Inc.*

Brian J. Fisher
David C. Larsen
Mayer LLP
Albuquerque, New Mexico

    *Attorneys for Defendant Gilbert Tan d/b/a/ GMT Trucking*

Raul P Sedillo
Butt, Thornton & Baehr, PC
Albuquerque, New Mexico

    *Attorneys for Defendant Har-Sukh Corp., Inc.*

R D Lohbeck
Sandia Park, New Mexico

    *Attorney for Defendants Sam Sandhu, Jasvir Singh, Rajinder Singh Bassi, and Teri-OAT, LLC*

Lance Dean Richards
Lauren Wilber
Civerolo, Gralow, & Hill P.A.
Albuquerque, New Mexico

*Attorneys for Defendants Goodwill Trucking, LLC and Gurpreet Such*